UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES,

    Plaintiff,

v.

ERIC WALKER,

    Defendant.

_____/

Case No. 20-cr-20516

U.S. District Court Judge
Gershwin A. Drain

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE (ECF NO. 35)**

### I. INTRODUCTION

On October 28, 2020, Defendant Eric Walker was charged in a four-count indictment with possession with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Counts I, II, and III), and felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). ECF No. 10. Presently before the Court is Mr. Walker's Motion to Suppress Evidence. ECF No. 35. The Government opposes the Motion and has filed a Response, ECF No. 37, but Mr. Walker has not filed a reply. The Court conducted a hearing on the Motion on

1

July 11, 2022 at 10:00 a.m. For the following reasons, the Court will **DENY** Defendant's Motion to Suppress Evidence (ECF No. 35).

## II. BACKGROUND

### A. Factual Background

On September 4, 2020, Detroit Police received an anonymous tip that Defendant had been selling cocaine, heroin, marijuana, and pharmaceutical pills from a residence located at 11101 Kennebec Street in the City of Detroit. ECF No. 35-1, PageID.256. The Complainant gave Mr. Walker's name and physical appearance. *Id.* The Complainant also alleged that the Complainant's neighbor had almost overdosed on Mr. Walker's product and that Mr. Walker had sold to a 16-year-old. *Id.* Finally, the Complainant claimed there is a lot of traffic at the Kennebec residence and that the Complainant had seen several neighbors purchase narcotics there. *Id.*

Subsequently, on September 22, 2020, Officer Dykema established a fixed surveillance on the Kennebec residence. *Id.* He observed a man matching Mr. Walker's description unlock and enter the residence. *Id.* Shortly thereafter, he observed two women, one after the other, drive up to the residence, park, knock, enter, and leave after each being inside for five minutes or less. *Id.* They were followed by a man who walked up to the house, knocked, entered, and similarly left

2

within five minutes. *Id.* A few minutes later, another car drove up, and the man matching Mr. Walker's description exited the Kennebec residence and appeared to conduct a narcotics transaction on the passenger side of the vehicle, which left within five minutes of arriving. *Id.* Shortly after that, another man drove up to the residence and appeared to conduct a narcotics transaction with the man matching Mr. Walker's appearance at the front door, which took less than a minute. *Id.* at PageID.257. When this concluded, the man matching Mr. Walker's description drove to another residence at 15232 Collingham, also in the City of Detroit. *Id.*

Later that day, Officer Dykema followed the man matching Mr. Walker's description back to the Kennebec residence, and observed similar behaviors and interactions, including one man arriving with a paper bag that he seemingly left inside the residence. *Id.* at PageID.257. Then, on September 23, 2020, Detroit Police received yet another anonymous tip that Mr. Walker was selling narcotics from the Kennebec residence and that there was a high volume of traffic at the residence throughout the day. *Id.* at PageID.258. Accordingly, Officer Dykema resumed fixed surveillance of the residence. *Id.* He observed similar behavior and interactions as he had seen the day before. *Id.*

Officer Dykema included all the information from the anonymous tip as well as his surveillance in his search warrant affidavit. *See generally* ECF No. 35-1. He

3

also confirmed Mr. Walker owned the Kennebec residence and established that Mr. Walker was a convicted felon on multiple firearms related crimes. *Id.* at PageID.259. Officer Dykema concluded that "the short stay pedestrian and vehicle traffic at the location [was] consistent with narcotic activity." He also noted that when the cars belonging to the man matching Mr. Walker's description were not present, "no vehicles or pedestrian traffic arrives" so he "did not observe any perceived narcotic transactions when the aforementioned vehicles are not there." *Id.* at PageID.258. Thus, Officer Dykema stated in his affidavit that he had "probable cause to believe that [narcotics and firearms] w[ould] be found inside the premises and curtilage." *Id.* at PageID.259.

The warrant application was reviewed and approved by a Wayne County prosecutor. ECF No. 37-1, PageID.276. Based on Officer Dykema's affidavit and testimony, on September 23, 2020, Magistrate Judge Dawn White of the 36th District Court in Detroit issued a search warrant authorizing the search of premises and curtilage of the Kennebec residence as well as the suspected seller. *Id*. The warrant authorized the seizure of, *inter alia*, "[a]ll controlled substances, all moneys, books and records used in connection with illegal narcotics trafficking . . . [and] all firearms or ammunition used in connection with the above described activities." *Id*.

4

Detroit Police executed the search warrant on September 24, 2020 and recovered cocaine, marijuana, and U.S. currency. ECF No. 35, PageID.243.

## B. Procedural Background

As stated *supra*, on October 28, 2020, a grand jury charged Mr. Walker with possession with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Counts I, II, and III), and felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). ECF No. 10. Mr. Walker is also subject to a sentencing enhancement under 21 U.S.C. §§ 841 and 851 due to having a prior conviction for a serious drug felony. *Id.* at PageID.40-41.

Mr. Walker moves to suppress the evidence siezed pursuant to the September 24, 2020 search warrant. ECF No. 35. Specifically, he argues, the search warrant "lacked a sufficient basis for probable cause," and it "was so lacking in information to establish probable cause to believe that evidence of a crime would be uncovered that the agents could not rely on it in 'good faith.'" *Id.* at PageID.240. Mr. Walker asserts that despite the information from the anonymous tips, his "status as a supposed drug dealer does *not* give rise to a fair probability that drugs will be found in his home." *Id.* at PageID.249 (citing *United States v Frazier*, 423 F.3d 526, 533 (6thCir. 2005); *United States v Brown*, 828 F.3d 375, 385 (6th Cir. 2016)). Mr. Walker contends Officer Dykema's affidavit did not provide "facts showing that the

5

residence had been used in drug trafficking" and instead relied on "people coming to the residence and leaving a short time later." *Id.* at PageID.250. In particular, he avers there was no evidence he lived in the house or stayed their frequently; nor did Officer Dykema allege to have seen him carrying drugs in or out of the residence. *Id.* at PageID.253. Because Mr. Walker maintains there was no nexus between the Kennebec residence and the alleged illegal activity, he also argues that the good faith exception to the valid warrant requirement does not apply.

The Government opposes. ECF No. 37. It asserts the facts in the affidavit, taken as a whole, establish probable cause. *Id.* at PageID.268. Specifically, the Government contends two anonymous informants told police that Mr. Walker was selling narcotics out of the Kennebec residence and Officer Dykema made sufficient independent observations over a two-day period to corroborate the tip. *Id.* at PageID.269. These observations included twelve suspected narcotics transactions where the suspected buyer stayed only briefly inside the residence and at least two hand-to-hand transactions where the man matching Mr. Walker's description exited the residence to meet with people outside. *Id.* The Government maintains the pattern activity Officer Dykema observed was consistent with drug trafficking. *Id.* at PageID.270. Further, the Government emphasizes that Mr. Walker was identified by name and address in both tips and that the first tip included a detailed description

6

of him. *Id.* Additionally, Officer Dykema investigated further to confirm that Mr. Walker owned the Kennebec residence aside from seeing him enter the residence with keys. *Id*.

### III. LAW & ANALYSIS

#### A. Legal Standard

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. Amend. IV. Generally, this means law enforcement must obtain a warrant to search someone's property. *See United States v. Smith*, 510 F.3d 641, 647 (6th Cir. 2007) (citing *Maryland v. Dyson*, 527 U.S. 465, 466 (1999)). Warrants must be supported by probable cause and an "[o]ath or affirmation, [] particularly describing the place to be searched and the persons or things to be seized." U.S. Const. Amend. IV. In turn, probable cause exists where "all the circumstances set forth in the affidavit" demonstrate "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). In other words, the affidavit submitted to the magistrate judge must describe a "nexus between the place to be searched and the evidence sought." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) *see also United States v. Davison*, 766 F. App'x 232, 236 (6th Cir. 2019) ("To establish probable cause to search a home for drugs, there must be 'a fair probability,' given all the

7

circumstances described in the affidavit, that drugs will be found in the home searched.") (citation omitted). "The critical element is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific things to be searched for and seized are located on the property to which entry is sought." United States v. Frazier, 423 F.3d 526, 532 (6th Cir. 2005) (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978) (internal quotation marks omitted)).

Nevertheless, probable cause is "not a high bar" and "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *United States v. Tagg*, 886 F.3d 579, 585 (6th Cir. 2018) (quoting *D.C. v. Wesby*, 138 S. Ct. 577, 586 (2018)); *see also United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006) (probable cause requires "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion") (citation omitted). Additionally, "reviewing courts are to accord the magistrate's [probable cause] determination great deference." *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc) (internal quotation marks and citations omitted). Indeed, a magistrate judge's probable cause determination should only be reversed if it was arbitrarily made. *Coffee*, 434 F.3d at 892 (citing *Allen*, 211 F.3d at 973).

8

B. Discussion

### 1. The affidavit established probable cause to search the Kennebec residence.

As stated *supra*, Defendant argues the search warrant did not establish probable cause to search the Kennebec residence. For the following reasons, the Court disagrees.

When a search warrant application contains information from an anonymous informant, the issuing judge must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Hoang*, 487 F. App'x 239, 240–41 (6th Cir. 2012) (citing *Gates*, 462 U.S. at 238). A tip from an anonymous informant will rarely provide the basis of his or her knowledge or reveal his or her veracity. *Gates*, 462 U.S. at 237. "But because the totality of the circumstances governs the probable-cause inquiry, independent police investigation that corroborates the tipster's allegations can make up for these deficiencies[.]" *Hoang*, 487 F. App'x at 241 (citations omitted).

Here, the first anonymous informant identified Mr. Walker by name and described him in addition to asserting that he or she had seen Mr. Walker selling

9

narcotics from the Kennebec residence. Notably, the informant stated his or her neighbor had almost overdosed on drugs purchased from Mr. Walker sold to a 16-year-old neighbor. During his surveillance, Officer Dykema observed a man matching the description of Mr. Walker unlock the Kennebec residence with keys; he also independently confirmed the residence belongs to Mr. Walker. Over the course of two days, Officer Dykema observed twelve short stays that corroborated the "heavy traffic" described in both anonymous tips. He also specifically observed several instances in which the man matching Mr. Walker's description conducted what appeared to be a narcotics transaction near the front door or at the window of a car that had driven up to the residence.

In sum, the Court finds there is sufficient information in the affidavit from which Magistrate Judge White could have assessed the anonymous informants' "basis of knowledge" and "veracity." The affidavit demonstrates that Officer Dykema sufficiently corroborated much of the information provided by observing a man matching the informant's description at the Kennebec residence, verifying that the Kennebec residence belongs to Mr. Walker, and observing the "high traffic" at the Kennebec residence.

Defendant also challenges the sufficiency of the nexus between the alleged narcotics trafficking operation and the Kennebec residence. The Court disagrees.

10

First, both anonymous informants asserted that Mr. Walker was selling narcotics at the Kennebec residence. As stated *supra*, Officer Dykema corroborated this information. His observations indicated that Mr. Walker appeared to be engaging in narcotics transactions from the Kennebec residence, either within the house or bringing drugs from within the house to meet people at the door on the street just outside the residence. Specifically, Officer Dykema found "the short stay pedestrian and vehicle traffic at the location consistent with narcotic activity." ECF No. 37-1, PageID.281. His observations, the anonymous tips, and his experience "execut[ing] numerous narcotics search warrants" led Officer Dykema to believe illegal narcotics and firearms would be found in the Kennebec residence. The Court agrees with Officer Dykema and Magistrate Judge White that this information provided probable cause to search for evidence of narcotics trafficking at the Kennebec residence.

Mr. Walker relies on several cases that are inapplicable here. For example, in *United States v Brown*, the Sixth Circuit held that if an affidavit "fails to include facts that directly connect the residence with the suspected drug dealing activity, or the evidence of this connection is unreliable, it cannot be inferred that drugs will be found in the defendant's home—even if the defendant is a known drug dealer." 828 F.3d at 384. Importantly, the affidavit in *Brown* was devoid of any evidence that the defendant distributed narcotics from his home or that any suspicious activity had

11

taken place at his home. *Id.* at 382. Here, in contrast, the affidavit specifically demonstrates that Mr. Walker sold narcotics out of the Kennebec residence through two anonymous informants and Officer Dykema's surveillance of the location. Additionally, unlike in *Brown*, the instant affidavit was not exclusively based on the defendant's status as a drug dealer. *Id.* at 383 (collecting cases).

The other cases on which Defendant relies are similarly inapplicable because, unlike the instant affidavit, they addressed affidavits that demonstrated little to no nexus between the location to be searched and the evidence to be seized. *United States v. Higgins*, 557 F.3d 381, 390 (6th Cir. 2009) (affidavit provided "scant" information about the informant's reliability and no evidence that the informant had ever seen drugs or other evidence inside the defendant's apartment, and the corroboration—that the defendant lived at the location, owned the motorcycle parked outside, and had a drug-related criminal history—did "little to reinforce the informant's assertions"); *United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006) (affidavit only stated that defendant resided at the location and had been previously arrested for a non-drug offense with a quantity of crack cocaine on his person); *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (affidavit stated marijuana was growing "near" the residence and that a road ran nearby

12

without any indication that people regularly traveled between the marijuana patch and the residence or that people had been observed doing so).[1]

Accordingly, considering the totality of the circumstances provided by the search warrant, the Court concludes Magistrate Judge White had sufficient information to find probable cause that a search of the Kennebec residence would provide evidence of narcotics trafficking.

### 2. Regardless, the good faith exception applies.

Even if the affidavit failed to establish probable cause, the evidence would not be suppressed because the agents executing the warrant relied on it in good faith.

In *United States v. Leon*, the Supreme Court held that the exclusionary rule does not apply for evidence "seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." 468 U.S. 897, 905 (1984). Courts engaging in this inquiry must ask "whether a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] decision."

---

[1] Mr. Walker also, erroneously, relies on *United States v. Frazier*, in which the affidavit was based on information from two confidential informants that had not been bolstered by law enforcement. F.3d 526, 532 (6th Cir. 2005) (affidavit "contain[ed] no facts supporting the confidential informants' reliability" including averments about the reliability of information previously provided by the informants, the length of the relationship between the informants and law enforcement, or that the informants identities were disclosed to the magistrate). Here, in contrast, the informants were anonymous, but Officer Dykema corroborated much of the information they provided.

*United States v. White*, 543 F.3d 490, 496 (6th Cir. 2017) (citation omitted). An agent's reliance on a subsequently invalidated warrant cannot be considered objectively reasonable under four situations:

> (1) when the warrant is issued on the basis of an affidavit that the affiant knows (or is reckless in not knowing) contains false information; (2) when the issuing magistrate abandons his neutral and detached role and serves as a rubber stamp for police activities; (3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; and, (4) when the warrant is so facially deficient that it cannot reasonably be presumed to be valid.

*United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005) (citing *Leon*, 468 U.S. at 914–23).

Mr. Walker argues that the third situation is present here. An "affidavit [] so lacking in indicia of probable cause that belief in its existence is objectively unreasonable," also known as a "bare bones affidavit[,] . . . contain[] only suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *Id.* (citations and internal quotation marks omitted). This standard "'is a less demanding showing than the substantial basis threshold required to prove the existence of probable cause in the first place.'" *Id.* (quoting *Carpenter*, 360 F.3d at 595). When reviewing a search warrant, a court must read the affidavit "holistically . . . employing a healthy dose of common sense." *United States v. White*, 874 F.3d 490, 502 (6th Cir. 2017) (citation

14

omitted). Thus, "[i]f an inference is obvious from the factual context, a reviewing court should indulge it." *Id.* (citing *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000) (en banc)).

Here, in addition to the reasons, discussed *supra*, this Court determined the affidavit established probable cause to execute the warrant, prior to submitting the warrant application to Magistrate Judge White, law enforcement had it reviewed by a Wayne County prosecutor, who approved the application. The "fact that the officers sought and obtained approval of the warrant application from . . . a [prosecuting] attorney before submitting it to the magistrate provides further support for the conclusion that an officer could reasonably have believed that the scope of the warrant was supported by probable cause." *Messerschmidt v. Millender*, 565 U.S. 535, 553 (2012).

Moreover, the affidavit was not "bare bones." "A bare-bones affidavit is a conclusory affidavit, one that asserts only the affiant's belief that probable cause existed." *White*, 874 F.3d at 496 (internal quotation marks and citations omitted). "In contrast," if the affidavit has "some connection, regardless of how remote it may have been—some modicum of evidence, however slight—between the criminal activity at issue and the place to be searched, then the affidavit is not bare bones and official reliance on it is reasonable." *Id.* at 496–97 (citations and internal quotation

15

marks omitted). Thus, "[a] bare-bones affidavit should not be confused with one that lacks probable cause." *Id.* at 497.

Here, the affidavit contained far more than Officer Dykema's belief that probable cause existed. It provided a detailed description of his observations of the Kennebec residence over the course of two days, including twelve short stays and two hand-to-hand transactions. It also included Officer Dykema's independent confirmation that Mr. Walker owned the Kennebec residence and his observation that someone matching the description of Mr. Walker given in the first anonymous tip was able to unlock the Kennebec residence with a key.

Thus, based on the information provided in the affidavits, the Court concludes a reasonably well-trained officer could not have known the search was illegal despite the issued warrant. Therefore, even if the affidavit had failed to establish probable cause for the search, the evidence should not be suppressed under *Leon*'s good faith exception.

## IV. CONCLUSION

Accordingly, for the reasons articulated above, **IT IS HEREBY ORDERED** that Defendant's Motion to Suppress Evidence (ECF No. 35) is **DENIED**.

**IT IS SO ORDERED**.

/s/ Gershwin Drain
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE

Dated: July 20, 2022

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
July 20, 2022, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager

17